# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ZUBERI J. KHALFANI,

           Plaintiff,

v.

KREILKAMP TRUCKING, TIM
KREILKAMP, TODD HENKE, JAMES
WATHAN, and ROBERT CRISTIE,

           Defendants.

Case No. 25-CV-1570-JPS

**ORDER**

On October 14, 2025, Plaintiff Zuberi J. Khalfani ("Plaintiff"), proceeding pro se, filed this action, alleging that Defendants Kreilkamp[1] Trucking, Tim Kreilkamp ("Kreilkamp"), Todd Henke ("Henke"), James Wathan ("Wathan"), and Robert Cristie ("Cristie") (collectively, "Defendants") violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"), 42 U.S.C. § 1983, and Wisconsin Statutes § 995.50. ECF No. 1. Plaintiff also alleges, inter alia, defamation and false imprisonment. *Id.* Plaintiff additionally filed a motion for leave to proceed without prepaying the filing fee. ECF No. 2. This Order resolves Plaintiff's motion to proceed in forma pauperis and screens his complaint.

## 1.    MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING THE FILING FEE

The Prison Litigation Reform Act ("PLRA") applies to this case because Plaintiff was a prisoner when he filed his complaint. *See* 28 U.S.C.

---

[1]Plaintiff spells Kreilkamp two different ways throughout the complaint. *See generally* ECF No. 1. The Court presumes that he means to sue an individual named Tim Kreilkamp as well as Kreilkamp Trucking.

§ 1915(h). The PLRA allows the Court to give a prisoner plaintiff the ability to proceed with his case without prepaying the civil case filing fee. *Id.* § 1915(a)(2). When funds exist, the prisoner must pay an initial partial filing fee. 28 U.S.C. § 1915(b)(1). He must then pay the balance of the $350 filing fee over time, through deductions from his prisoner account, *id.*, or if the prisoner is released, he must pay the balance of the filing fee as he is able over time.

On November 26, 2025, the Court ordered Plaintiff to pay an initial partial filing fee of $25.44. ECF No. 10. Plaintiff paid that fee on December 9, 2025. The Court will grant Plaintiff's motion for leave to proceed without prepaying the filing fee. ECF No. 2. He must pay the remainder of the filing fee, $324.56, in the manner explained at the end of this Order.

**2. SCREENING STANDARDS**

When a pro se litigant seeks to proceed in forma pauperis, the Court must screen the litigant's complaint prior to service on defendants. *See* 28 U.S.C. § 1915(e)(2). The Court "shall dismiss the case" if it finds any of the following: the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief, *id.*; or the case is outside of the Court's subject matter jurisdiction, FED. R. CIV. P. 12(h).

A claim is legally frivolous when it "lacks an arguable basis either in law or in fact." *Denton v. Hernandez*, 504 U.S. 25, 31 (1992) (quoting *Neitzke,* 490 U.S. at 325); *see also Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997) (quoting same). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke*, 490 U.S. at 327.

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (quoting *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81 (citing *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008)). However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

**3.      RELEVANT ALLEGATIONS**

At the start of July 2024, Plaintiff was employed by Kreilkamp Trucking, apparently as a truck driver. ECF No. 1 at 5–6. On July 1, 2024,

Plaintiff was arrested. *Id.* At the time of his arrest, Plaintiff had in his possession a personal backpack containing personal belongings. *Id.* The arresting officer took Plaintiff's backpack and handed it to Cristie, another Kreilkamp Trucking employee. *Id.* Sometime thereafter, the bag was placed on the passenger seat of Plaintiff's assigned truck. *Id.*

On July 2, 2024, Henke, Kreilkamp Trucking's shop supervisor, went into Plaintiff's assigned truck, took his personal backpack, and pulled out his personal belongings. *Id.* He then allegedly found a pistol and magazine at the bottom of the backpack. *Id.* Henke then removed the backpack from the truck and placed it in his office. *Id.* He subsequently called Wathan, Kreilkamp Trucking's safety manager, who handled and cleared the pistol and placed it back in the backpack. *Id.* at 6–7. Wathan then directed Henke to put the backpack back in the truck where he found it while he contacted Washington County sheriffs. *Id.* at 7.

When the responding officer, Officer Jillings, arrived at Kreilkamp Trucking base, Wathan told him that Henke had found the pistol in Plaintiff's personal bag inside the truck. *Id*. Wathan also informed Officer Jillings that the bag was in Plaintiff's possession on July 1, 2024, when Plaintiff was taken into custody. *Id*. He explained the factual background of the men finding the bag and firearm and placing it back in the truck where Cristie had originally placed it. *Id*.

Wathan claimed to Officer Jillings that Kreilkamp Trucking had employees sign paperwork giving the company authorization to search the assigned trucks. *Id*. However, when later asked for a copy of this authorization, Wathan claimed it was not a signed document but a verbal notice. *Id*.

Following another exchange with Wathan, Officer Jillings asked Henke to show him exactly where he found the backpack. *Id.* at 8. Henke explained that he was going in the truck to turn off the electricity and clean out the refrigerator, and he noticed the backpack. *Id.* He said he picked it up and noticed it felt unusually heavy, so he opened it and removed its contents. *Id.* At the bottom of the bag, he allegedly noticed a firearm and magazine. Officer Jillings took possession of the firearm as evidence. *Id.*

On July 3, 2024, Officer Jillings returned to Kreilkamp Trucking's base to meet with Cristie to discuss in more detail exactly where he placed the backpack in the truck. *Id.* at 8–10. During that conversation, Wathan explained that he had pressured Cristie, who had actually placed the bag on the passenger seat, to say that he had placed it between the seats. *Id.* at 10.

Wathan then left the office, at which point Kreilkamp, the President of Kreilkamp Trucking, walked in. *Id.* Kreilkamp asked the officer if Plaintiff had a viable claim for wrongful termination, and Officer Jillings replied that he did not know. *Id.* at 10–12.

Kreilkamp then went on to say that he "knew the routine; black people are trash, it's like a black cloud over them, I don't want them around. You see them trucks out there? I'll keep them empty before I bring anymore of them people in here." *Id.* at 12.

On July 3, 2024, Plaintiff was terminated from his position of Kreilkamp Trucking. *Id*.

## 4. SCREENING THE COMPLAINT

### 4.1 Claims Sufficient to Survive Screening

#### 4.1.1 Employment Discrimination

First, Plaintiff asserts a claim under Title VII in connection with his termination from Kreilkamp Trucking. ECF No. 1 at 3. "The legal standard used to evaluate a discrimination claim 'is simply whether the evidence,' considered as a whole, 'would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse employment action.'" *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018) (quoting *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 765 (7th Cir. 2016)).

Here, Plaintiff alleges that he was discriminated against because he was "African-American" and "brown skinned." ECF No. 1. at 5. In support, he points to verbal exchange between Kreilkamp, Plaintiff's employer, and Officer Jillings prior to his termination in which Kreilkamp allegedly stated "black people are trash" and that he did not "want them around," specifically noting that he would rather have his fleet of trucks "empty." *Id*. at 12. Since Plaintiff is an African-American who was working for Kreilkamp as a truck driver, a factfinder could find it plausible that Plaintiff's subsequent discharge by Kreilkamp was based, at least in part, on his protected racial characteristics. *Kaminski v. Elite Staffing*, Inc., 23 F.4th 774, 777 (7th Cir. 2022) (in employment discrimination cases, "a plaintiff need only allege enough facts to allow for a *plausible* inference that the adverse action suffered was connected to her protected characteristics" (citing *Graham v. Bd. of Educ.*, 8 F.4th 625, 627 (7th Cir. 2021) and *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008))). Because Plaintiff has provided a copy of his right-to-sue letter from the Equal Employment

Opportunity Commission, ECF No. 1 at 16, Plaintiff may proceed on his Title VII claim. *Worth v. Tyler*, 276 F.3d 249, 259 (7th Cir. 2021) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398 (1982) and *Perkins v. Silverstein*, 939 F.3d 463, 471 (7th Cir. 1991) (noting that, although it is not a jurisdictional prerequisite, an employment discrimination claim is subject to dismissal without a right-to-sue letter)).

### 4.1.2 Invasion of Privacy

Plaintiff also alleges violation of Wisconsin Statutes § 995.50 ("Right of Privacy"). Specifically, he alleges that "Kreilkamp Trucking, by way of . . . Henke, violated [Plaintiff]'s right(s) of privacy." ECF No. 1 at 18. The statute provides civil relief to one whose privacy is unreasonably invaded. WIS. STAT. § 995.50. An "invasion of privacy" is defined, in relevant part, as "[i]ntrusion upon the privacy of another of a nature highly offensive to a reasonable person, except as provided under par. (bm), in a place that a reasonable person would consider private, or in a manner that is actionable for trespass." *Id*. Neither this Circuit nor the Wisconsin state courts have squarely addressed whether backpacks are private "places" for purposes of an invasion of privacy statute. In the closest case that the Court has found, *Emiabata v. Marten Transp., Ltd.*, the court found that a privately-owned refrigerator located inside an employer-owned truck could be sufficiently private for a plaintiff to prevail on a § 995.50 claim. 574 F. Supp. 2d 912, 917 (W.D. Wis. 2007). Similarly, in *Fischer v. Mt. Olive Lutheran Church, Inc.*, the court concluded that the statutory term "place" was broad enough to encompass "a person's private belongings [including an email account] as long as the place these private belongings are intruded upon is one that a reasonable person would consider private." 207 F. Supp. 2d 914, 928 (W.D. Wis. 2002)).

That said, the Court is skeptical of whether a bag may be considered a "place" within the meaning of § 995.50. In cases such as *Hillman v. Columbia County*, the Wisconsin Court of Appeals held that the term "place" is plainly "geographical" and cannot be read to encompass a file of medical records. 474 N.W.2d 913, 919 (Wis. Ct. App. 1991). Likewise, in *Buckeridge v. University of WI Hospital & Clinics Authority UW Health*, the Wisconsin Court of Appeals held that "medical records stored on a computer system" are not sufficiently "geographical" to constitute a "place" for purposes of the Wisconsin "invasion of privacy" statute. 932 N.W.2d 185, ¶ 12, 13. This aligns with the *Restatement (Second) of Torts* § 625B comment (b), which seems to distinguish between "places" and "private concerns," the latter of which is exemplified, it says, by one's safe or wallet.

At this juncture, however, in light of the relative dearth of directly on-point cases, the Court is not prepared to dispose of Plaintiff's claim and would entertain further briefing on the matter. Moreover, the Court is satisfied that it has jurisdiction over this claim. Supplemental jurisdiction allows federal courts to hear and decide state law claims along with federal law claims when they "are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367(a). It may apply in cases where "the state and federal claims derive from a common nucleus of operative facts." *Ammerman v. Sween*, 54 F.3d 423 (7th Cir. 1995) (citing *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 725 (1966)). "A loose factual connection between the claims is generally sufficient," *Sanchez & Daniels v. Koresko*, 503 F.3d 610, 614 (7th Cir. 2007) (quoting *Baer v. First Options of Chicago, Inc.*, 72 F.3d 1294, 1299 (7th Cir. 1995) and *Ammerman*, 54 F.3d at 424), so long the facts supporting the

state claim "form[] a subset of the facts supporting" the federal claim. *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 683 (7th Cir. 2014).

Here, such supplemental jurisdiction exists, as the federal and state law claims would likely implicate a substantial degree of factual overlap; the race discrimination claim will require evidence of why Plaintiff was fired, which will in turn implicate the alleged firearm found in his bag. *See, e.g., Lerman v. Turner*, No. 10 C 2169, 2012 WL 1409526, at *1 n.2 (N.D. Ill. Apr. 23, 2012) (finding that defendants made a showing sufficient for supplemental jurisdiction where alleged improper grant payments (constituting a state law claim) provided a non-discriminatory reason for terminating plaintiff). Thus, Plaintiff may proceed on his invasion of privacy claim.

### 4.2    Claims Requiring Amendment

#### 4.2.1    Constitutional Claim

Plaintiff references 42 U.S.C. § 1983 in his complaint. ECF No. 1 at 4. To state a claim under § 1983, Plaintiff must allege: (1) that he was deprived of a right secured by the Constitution or laws of the United States and (2) that the person who deprived him of that right acted under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). While "act[ing] 'under color of' state law for § 1983 purposes does not require that the defendant be an officer of the State[,]" a plaintiff must still demonstrate that the named defendant "is a willful participant in joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980). "The plaintiff must identify a sufficient nexus between the state and the private actor to support a finding that the deprivation committed by the private actor is 'fairly attributable to the state.'" *L.P. v. Marian Cath. High Sch.*, 852 F.3d 690, 696 (7th Cir. 2017) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

In other words, in order to show state action for purposes of § 1983 where the actors are ostensibly private, "the state must somehow be responsible for the allegedly unlawful actions taken by the private party." *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996).

Plaintiff has not alleged facts that indicate state action here. Kreilkamp Trucking appears to be a private entity that provides hauling services for meats, cheese, spirits, agricultural supplies, and manufacturing supplies, among other things. *See* KREILKAMP TRUCKING, https://www.kreilkamp.com/ (last visited Mar. 11, 2026). As alleged, Kreilkamp Trucking and all of its employees were private citizens operating in private capacities at the time of the alleged wrongdoing. Thus, Plaintiff's § 1983 claim cannot survive screening under the current allegations because Plaintiff does not state a claim upon which relief can be granted.

The Court will permit Plaintiff to amend his complaint to resolve these deficiencies and state a claim under 42 U.S.C. § 1983, if he believes his circumstances fit the above criteria. If Plaintiff chooses to amend his complaint, his amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and each Defendant with notice of what Defendant allegedly did or did not do to violate his rights, in this case under 42 U.S.C. § 1983. In essence, the amended complaint should provide the Court with enough facts to answers to the following questions: 1) Who violated his constitutional rights?; 2) What did each person do to violate his rights?; 3) How was each person acting on behalf of the state?; 4) Where did each person violate his rights?; and 5) When did each person violate his rights? Plaintiff should attempt to provide a clear story of what happened; simply saying "my rights were violated" is not enough. If Plaintiff's amended

complaint does not adequately allege these facts, the claim will be dismissed.

### 4.2.2 Defamation

Plaintiff also makes a claim for defamation of character, alleging that a false statement about him was made "to Western Express Trucking representative conducting employment reference and experience check." ECF No. 1 at 18–20. Specifically, Plaintiff claims that the defaming individual "falsely stat[ed] that Mr. Khalfani was involved in two accidents," when in fact "Mr. Khalfani has no record of accidents on his clearing house or driving record." *Id*.

In order to state a claim for defamation, a plaintiff must show the following elements:

> (1) a false statement; (2) communicated by speech, conduct or in writing to a person other than the person defamed; and, (3) the communication is unprivileged and tends to harm one's reputation so as to lower him or her in the estimation of the community or to deter third persons from associating or dealing with him or her.

*Torgerson v. Journal/Sentinel, Inc.*, 563 N.W.2d 472, 477 (Wis. 1997) (citations omitted). Plaintiff's complaint as written cannot proceed for two reasons. ECF No. 1 at 19–21. First, Plaintiff does not state who made the statements or when the statements were made, providing insufficient notice. *See Twombly*, 550 U.S. at 555 (discussing fair notice). Notice here is insufficient even though this Court requires less pleading detail for a defamation claim than a Wisconsin state court would. *Wesbrook v. Ulrich*, 90 F.3d 803, 806 n.2 (W.D. Wis. 2015) (noting that "no heightened pleading standard is required for a defamation claim in this [federal district] court, as it would be in a Wisconsin state court" due to Federal Rule of Civil Procedure 8). To satisfy this Court's notice requirement in any amended complaint, Plaintiff should

provide the Court with enough facts to answers to the following questions: 1) Who defamed him?; and 2) When did the defamation occur? Plaintiff should be sure to also restate the content of his initial claim, as any amended complaint must stand alone without reference to the original complaint. *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 (7th Cir. 1998) (citing *Wellness Cmty.-Nat'l v. Wellness House*, 70 F.3d 46, 49 (7th Cir. 1995) and *Barnett v. Daley*, 32 F.3d 1196, 1198 (7th Cir. 1994)).

Second, and perhaps more significantly, this claim does not clearly lend itself to supplemental jurisdiction, as it does not seem to arise out of any common facts with the federal race discrimination claim. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 680 (7th Cir. 2014) (finding no supplemental jurisdiction where the federal and state law claims "arose from a different set of facts and were not part of the same case or controversy"). Specifically, it seems to the Court that any factual overlap between the race discrimination claim—centered around Plaintiff's termination—and the defamation claim would be tenuous and minimal. Defamatory comments aimed at Plaintiff's driving record are not necessarily intertwined with Kreilkamp's alleged racially charged comments and Plaintiff's termination. Perhaps if Plaintiff alleged that the defamation was part of a broader pattern of racial animus or that Kreilkamp remarked that he wanted the trucks empty because African-Americans are bad drivers, that would be different. But without more, there is no basis to exercise supplemental jurisdiction here, as there does not seem to be a meaningful link between the federal and state law claims. However, since the Court cannot necessarily conclude that amendment would be futile, *Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519–20 (7th Cir. 2015) (citing *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*,

377 F.3d 682, 687 (7th Cir. 2004)), it will grant Plaintiff leave to amend his complaint to attempt to clarify this issue.

Relatedly, Plaintiff's "false accusation" claim does not appear to have any independent meaning beyond his defamation claim. Thus, it cannot survive screening as written. Plaintiff ought to consider elaborating on what he means by this or, in the alternative, abandoning this claim as covered by his defamation claim.

### 4.2.3 False Imprisonment

Plaintiff also alleges false imprisonment. First, it is unclear against whom this particular claim is lodged. *See Twombly*, 550 U.S. at 555 (discussing fair notice). Second, and more significantly, it appears that Plaintiff has confused the tort of false imprisonment with feeling that he has been wrongfully imprisoned.[2] The tort of false imprisonment is "[t]he unlawful restraint by one person of the physical liberty of another." *Maniaci v. Marquette Univ.*, 50 Wis.2d 287, 295, 184 N.W.2d 168 (1971) (citing *Lane v. Collins*, 29 Wis.2d 66, 69, 138 N.W.2d 264, 266 (1965)). Plaintiff does not allege that any of the Defendants physically restrained him. As such, this claim cannot survive screening as written. If there was a circumstance in which Plaintiff's physical liberty was restrained by these Defendants, Plaintiff should state so in his amended complaint.

Plaintiff's remaining "claims"—"[u]njustified termination of employment," "[f]alse imprisonment," "[b]locking [Plaintiff] from

---

[2]To the extent Plaintiff seeks to challenge the detention stemming from his state court conviction, he may address this on appeal in state court or, if applicable, via a habeas corpus petition under 28 U.S.C. § 2254. To the extent Plaintiff seeks to challenge the circumstances of his arrest, he may consider bringing an unlawful seizure claim under the Fourth Amendment. But in doing so, Plaintiff should carefully consider whether his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).

receiving unemployment from Kreilkamp Trucking," "[i]ntentionally making false statements," and "[r]acial discrimination and slander"—either collapse into claims previously addressed or are not independent claims in their own right. ECF No. 1 at 19–21.

### 4.3 Claim to be Dismissed

#### 4.3.1 Wisconsin Employment Law Discrimination Claim

Finally, Plaintiff asserts a claim for wrongful termination. He provides no direct detail here, so the Court will discern what it reasonably can from the balance of the complaint. Wisconsin law prohibits discrimination in employment on the basis of race. WIS. STAT. § 111.31–111.39. However, such a claim is inappropriate for federal courts; this claim must be litigated through the Department of Workforce Development's Equal Rights Division, or not at all. *See Aldrich v. Lab. & Ind. Rev. Comm'n*, 310 N.W.2d 866, 869 (Wis. Ct. App. 2008) (citing *Waid v. Merrill Area Pub. Schs.*, 91 F.3d, 857, 866 (7th Cir. 1996) (noting that a "plaintiff cannot assert a [Wisconsin Fair Employment Act] claim in federal court"). As such, this claim will be dismissed without prejudice. *Johnson v. Illinois Com. Comm'n*, 176 F. App'x 662, 663 (7th Cir. 2006) ("Dismissal for lack of subject matter jurisdiction is without prejudice." (citing *Enk v. Brophy*, 124 F.3d 893, 898 (7th Cir. 1997)).

### 5. CONCLUSION

For the reasons stated above, Plaintiff's motion to proceed in forma pauperis will be granted. Plaintiff must pay the balance of the $350 filing fee over time, through deductions from his prisoner account, as described in greater detail below. 28 U.S.C. § 1915(b)(1).

Moreover, the Court will grant Plaintiff leave to file an amended complaint that corrects the deficiencies explained in this Order. Plaintiff's

amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the Court and Defendant with notice of what Defendant allegedly did or did not do to violate his rights.

Any amended complaint must be filed on or before **April 10, 2026**. The Court is enclosing a copy of its amended complaint form and instructions. Plaintiff is advised that the amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint supersedes the prior complaint and must be complete in itself without reference to the original complaint. *Duda*, 133 F.3d at 1057 (citing *Wellness Cmty.-Nat'l*, 70 F.3d at 49 and *Barnett*, 32 F.3d at 1198). In such instances, the "prior pleading is in effect withdrawn as to all matters not restated in the amended pleading." *Id.* (quoting *Fuhrer v. Fuhrer*, 292 F.2d 140, 144 (7th Cir. 1961)). In other words, any amended complaint must include **all** of the allegations and claims (including those from the original complaint) that Plaintiff wishes to make in a single filing without reference to the prior complaint.

If an amended complaint is received, it will become the operative complaint in this action, and the Court will screen it in accordance with 28 U.S.C. § 1915. **If Plaintiff does not file an amended complaint by the specified deadline, or files a complaint which remains deficient, the Court will dismiss the relevant allegations.**

Accordingly,

**IT IS ORDERED** that Plaintiff Zuberi J. Khalfani's motion for leave to proceed without prepaying the filing fee, ECF No. 2, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that on or before **April 10, 2026**, Plaintiff Zuberi J. Khalfani shall **FILE** an amended complaint using the provided form and in accordance with the instructions provided herein; failure to do so will result in dismissal of the claims discussed *supra* Section 4.2;

**IT IS FURTHER ORDERED** that Plaintiff Zuberi J. Khalfani's state law wrongful termination claim, ECF No. 1 at 18, be and the same is hereby **DISMISSED without prejudice**;

**IT IS FURTHER ORDERED** that the Clerk's Office mail Plaintiff a blank prisoner amended complaint form and a copy of the guides entitled "Answers to Prisoner Litigants' Common Questions" and "Answers to Pro Se Litigants' Common Questions," along with this Order;

**IT IS FURTHER ORDERED** that the agency having custody of Plaintiff shall collect from his institution trust account the $324.56 balance of the filing fee by collecting monthly payments from Plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to Plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this case. If Plaintiff is transferred to another county, state, or federal institution, the transferring institution shall forward a copy of this Order along with his remaining balance to the receiving institution; and

**IT IS FURTHER ORDERED** that a copy of this Order be sent to the officer in charge of the agency where Plaintiff is confined.

Dated at Milwaukee, Wisconsin, this 11th day of March, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.